IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, DaimlerChrysler Corporation ("relator") filed this original action seeking a writ of mandamus directing respondent, the Industrial Commission of Ohio ("the commission"), to vacate its award of permanent total disability ("PTD") to respondent, Ronald J. Majerowski ("Majerowski"). Alternatively, relator requests issuance of a limited writ of mandamus directing the commission to conduct further proceedings regarding relator's request to re-adjust the start date for the PTD award.
 {¶ 2} We referred this matter to a magistrate pursuant to Rule 12(M) of this court and Civ.R.53(D). The magistrate issued a decision dated May 8, 2006. (Attached as Appendix A.) In that decision, the magistrate concluded that relator is not entitled to a writ of mandamus on the award of PTD, but is entitled to a writ of mandamus for the limited purpose of directing the commission to reconsider the starting date of Majerowski's PTD award. Both relator and Majerowski filed objections to the magistrate's decision. The commission filed a response in which it conceded that some of the reasoning for the magistrate's decision was not correct, but argued that the magistrate nevertheless reached the correct conclusion.
 {¶ 3} The parties presented joint stipulations regarding the evidence upon which the commission based its award. For purposes of brevity, we will not restate the magistrate's findings of fact, but will instead briefly summarize them. The evidence shows that Majerowski was injured during the course of his employment with relator on October 19, 1985. His claim has been allowed for lumbosacral strain, herniated disc at L5-S1, bulging disc at L5-S1, aggravation of pre-existing arthritis from L3-4 to L5-S1, fibrosis at L5-S1, depression, and anxiety. His claim has been specifically disallowed for disc narrowing at L3-4, L4-5 and L5-S1, and for spinal stenosis from L3-4 to L5-S1.
 {¶ 4} In December 1990, Majerowski filed an application seeking an award for PTD. In February 1993, the commission denied the application based on a number of vocational factors. Specifically, the commission found that his low to moderate impairment suggested that there were a number sedentary and light jobs he was capable of performing, and that his relatively young age of fifty two years suggested some potential to be successfully trained for some sedentary and light jobs. In 1996, Majerowski was granted a 33 percent permanent partial disability ("PPD") award, and thereafter entered into a settlement agreement with relator regarding any further PPD awards.
 {¶ 5} In April 2004, Majerowski filed another application for PTD. He had not worked since the date of injury, nor had he participated in retraining. In support of his application, Majerowski offered a physical impairment questionnaire prepared by Srini Hejeebu, M.D., a report regarding his psychological condition prepared by Beverly Damrauer, Ph.D., and a vocational report prepared by Joseph Havranek, Ed.D. Based on those reports, a commission staff hearing officer granted Majerowski's PTD application and set the start date for the award at April 27, 2002. Relator requested reconsideration of the order granting PTD or in the alternative, of the order setting the start date at April 27, 2002. The commission denied the request for reconsideration of the order granting PTD, but did not address the request for an adjustment of the starting date.
 {¶ 6} In order to establish the right to a writ of mandamus, relator must show that the commission abused its discretion by entering an order that is not supported by any evidence in the record. State ex rel.Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. Where the record shows "some evidence" supporting the commission's findings, there is no abuse of discretion, and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. The magistrate found in this case that there was some evidence in the record to support an award of PTD to Majerowski, and therefore concluded that relator is not entitled to a writ of mandamus on that issue. However, the magistrate also concluded that the commission's order did not adequately explain the reasons for setting the start date at April 27, 2002, and found that a writ of mandamus should be issued directing the commission to hold a hearing for the purpose of determining the date the PTD award should have taken effect.
 {¶ 7} Relator first argues that the magistrate erred in concluding that the commission did not abuse its discretion by granting Majerowski a PTD award without discussing his failure to obtain any retraining. In connection with this argument, relator claims that the evidence fails to show any worsening of Majerowski's medical condition subsequent to the 1993 denial of PTD that is related to his allowed conditions, that any change in Majerowski's medical condition is related more to the aging process, and that Majerowski's failure to seek retraining should preclude him from obtaining a PTD award.
 {¶ 8} The magistrate correctly pointed out that a PTD award cannot be based solely on the fact that a claimant has gotten older. State ex rel.Burke v. Indus. Comm. Franklin App. No. 03AP-1256, 2004-Ohio-5156. However, the magistrate concluded that in Majerowski's case, the aging process is not the only thing that has happened. In part, the magistrate relied on the fact that since Majerowski's PTD claim was denied in 1993, he was awarded a 33 percent PPD award and underwent two surgeries. Relator argues, and the commission concedes, that these two pieces of information do not support the magistrate's conclusion that Majerowski's allowed conditions had worsened since 1993.
 {¶ 9} The evidence shows that the 33 percent PPD award occurred after Majerowski's first PTD claim was denied in 1993, and did not reflect an increase of an already existing permanent partial disability award. Thus, the PPD award does not reflect a worsening of Majerowski's condition. The evidence also shows that the two surgeries Majerowski underwent in 2003 were for the purpose of relieving compression related to multilevel cervical spondylosis and severe spinal stenosis. These are not conditions that had been previously allowed; in fact, spinal stenosis was a specifically disallowed condition. Therefore, we reject those portions of the magistrate's decision concluding that the 33 percent PPD award and surgeries Majerowski underwent were evidence supporting the commission's decision to award PTD after having previously denied the claim.
 {¶ 10} Relator also argues that the magistrate incorrectly stated that the commission's conclusion to award PTD was based "solely" on Majerowski's medical conditions. In its response to relator's objections, the commission points out that its decision was based on factors in addition to Majerowski's medical conditions. Therefore, we also reject that portion of the magistrate's decision stating that the commission's decision was based "solely" on the medical conditions.
 {¶ 11} Next, relator argues that the commission and the magistrate improperly relied on the medical opinion rendered by Dr. Hejeebu in reaching the decision to award PTD. Specifically, relator first argues that the magistrate incorrectly stated that Dr. Hejeebu gave his opinion that Majerowski's condition had worsened over time, and that Dr. Hejeebu's report demonstrated significantly greater physical limitations than had existed in 1993.
 {¶ 12} Dr. Hejeebu's report does not use any specific language stating that Majerowski's condition had worsened over time. The report does state that Dr. Hejeebu had seen Majerowski during monthly office visits. The report also identifies a number of restrictions Majerowski would have to follow in order to be employed, including an inability to sit for more than 45 minutes at a time or for more than a total of two hours during an eight-hour workday, the need to perform a job that would allow shifting from standing to sitting at will, the need to take unscheduled breaks every half hour and rest for half an hour to an hour before returning to work, the inability to lift objects greater than ten pounds, and the inability to engage in any stooping or crouching. The report concludes with Dr. Hejeebu's opinion that based solely on the conditions allowed in the claim, Majerowski is incapable of sustained remunerative employment.
 {¶ 13} In its brief and in the objections to the magistrate's decision, relator challenges the magistrate's reliance on Dr. Hejeebu's report on a number of grounds. First, relator argues that the report should not be considered because when asked to give a date on which Majerowski's condition caused him to be unable to sustain remunerative employment, Dr. Hejeebu gave the date of October 1985, the time of the original injury. Relator argues that this statement exhibits the doctor's disagreement with the commission's 1993 denial of PTD, and the magistrate should therefore not have relied upon the report.
 {¶ 14} Second, relator argues that the magistrate incorrectly stated that Dr. Hejeebu's report concluded that Majerowski could not sustain remunerative employment "at this point in time." Relator points out that the report was prepared before Majerowski underwent the two surgeries, and that the circumstances had therefore changed by the time the commission was considering whether Majerowski was capable of sustaining remunerative employment. However, Dr. Hejeebu's report specifically states that his opinion was based on the allowed medical conditions, which, as relator pointed out, did not include the medical conditions for which the surgeries were performed.
 {¶ 15} Ultimately, the arguments set forth in support of relator's contention that Dr. Hejeebu's report should not have been considered relate to the weight to be given to those reports, and not to their general admissibility. The commission is the sole evaluator of the weight and credibility of evidence presented to it. State ex rel. Burleyv. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 508 N.E.2d 936. Thus, the commission was in the position of deciding any issues related to the weight to be given Dr. Hejeebu's report, and the magistrate did not err in finding that the commission did not abuse its discretion in making those determinations.
 {¶ 16} The same conclusion applies to relator's contention that the magistrate failed to consider the commission's lack of discussion of Majerowski's failure to obtain any retraining. However, the commission has a duty only to discuss that evidence upon which it relies, not to explain why it favors one piece of evidence over another. State ex rel.Dobbins v. Indus. Comm. (2006), 109 Ohio St.3d 235, 2006-Ohio-2286,846 N.E.2d 1243.
 {¶ 17} In its second objection, relator argues that the magistrate erred by finding that the commission did not abuse its discretion by awarding PTD where there was not "some evidence" to support the award. In its merit brief, relator set forth a number of challenges to the various medical reports upon which the commission relied. However, as stated above in our discussion of the attacks on Dr. Hejeebu's report, the challenges involve the weight to be given to the reports, not whether the commission should have refused to consider them. Thus, the commission's decision to award Majerowski PTD was supported by some evidence, and the commission did not abuse its discretion in making the award.
 {¶ 18} Majerowski also filed an objection to the magistrate's decision, arguing that the magistrate erred in finding that the commission did abuse its discretion in granting the PTD award as of April 27, 2002. The commission used that date because pursuant to R.C.4123.52, the commission could not make the award effective more than two years prior to the date of Majerowski's application. The only evidence in the record supporting determination of the date was Dr. Hejeebu's report stating that Majerowski had been unable to sustain remunerative employment since October 1985. The magistrate found that while the reference to October 1985 would not negate a current award of PTD, it did evidence an irreconcilable conflict between the report and the commission's 1993 denial of PTD. Thus, the magistrate concluded that a writ of mandamus should be issued to the commission directing it to give further consideration to the date on which the PTD award should be deemed effective.
 {¶ 19} We agree with the magistrate's conclusion that a writ of mandamus is appropriate for the limited purpose of directing the commission to reconsider the date on which Majerowski's PTD should have taken effect. Therefore, we overrule Majerowski's objection.
 {¶ 20} In conclusion, we hereby modify the magistrate's decision by removing the magistrate's conclusions that Majerowski's 33 percent PPD award and two surgeries were evidence supporting the commission's decision to award PTD, and that the commission's conclusion was based "solely" on Majerowski's medical conditions. We adopt the magistrate's decision, as modified, as our own.
 {¶ 21} Relator's request for a writ of mandamus directing the commission to vacate its award of PTD is denied. Relator's request for a writ of mandamus for the limited purpose of considering the effective date of the award is hereby granted and this matter is remanded to the commission for proceedings consistent with this opinion.
Objections overruled except as noted in the decision; writgranted.
 {¶ 22} Relator, DaimlerChrysler Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Ronald J. Majerowski ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 23} 1. Claimant sustained a work-related injury on October 19, 1985, and his claim has been allowed for "lumbosacral strain; herniated disc at L5-S1 level; depression and anxiety; bulging disc at L5-S1; aggravation of pre-existing arthritis from L3-4 to L5-S1; and fibrosis at L5-S1."
 {¶ 24} 2. Claimant has not worked since the date of injury.
 {¶ 25} 3. Claimant filed his first application for PTD compensation on December 12, 1990. At the time, claimant was 50 years of age.
 {¶ 26} 4. On August 25, 1992, claimant's application was heard before the commission and was denied. The commission relied upon medical reports which indicated that claimant was capable of some sedentary employment and analyzed the vocational factors as follows:
 * * * The claimant is fifty-two years old, has an eighth grade education, and a vocational history as a metal model maker. While the Commission recognizes the claimant's prior work experience has failed to afford him transferable work skills, a consideration of the claimant's relatively young age suggests the claimant is a viable candidate for successful retraining. The claimant's low to moderate impairment suggests there are a number of sedentary and light jobs for which the claimant is physically capable. Furthermore, the claimant's age of fifty-two years of age suggests he has the opportunity, potential, and motivation to be successfully trained for some sedentary and light jobs, such as unskilled or semi-skilled clerical work. Therefore, notwithstanding his present lack of skills and below average educational level, the Commission determines the claimant to be reasonably qualified for successful vocational training for jobs compatible with his physical limitations. Accordingly, his application for permanent total disability is denied.
(Emphasis sic.)
 {¶ 27} 5. In October 1996, claimant was awarded 33 percent permanent partial disability for his allowed condition.
 {¶ 28} 6. On April 27, 2004, claimant filed his second application for PTD compensation. At the time, claimant was 64 years old. On his application, claimant indicated that he had graduated from the eighth grade and had left school when he began working. Claimant did not obtain his GED. Claimant indicated that he was able to read, write, and perform basic math.
 {¶ 29} 7. In support of his second application for PTD compensation, claimant submitted a physical impairment questionnaire from Srini Hejeebu, M.D., who had been seeing claimant on a monthly basis. Dr. Hejeebu opined that claimant's pain and other symptoms were severe enough that they interfered with his attention and concentration, that his ability to sit continuously at one time is limited to only 45 minutes, and that claimant can sit for a total of less than two hours during the course of an eight hour work day, with normal breaks. Dr. Hejeebu indicated that claimant would need a job which permits him to change position at will from sitting to standing to walking, and that he needs to take unscheduled breaks approximately every one-half hour. Dr. Hejeebu also noted that claimant would have to rest for one-half hour to one hour before returning to work, that claimant sometimes needs to lie down at unpredictable intervals, that claimant is unable to lift or carry objects greater than ten pounds for less than one-third of a work day, and that he was completely prohibited from stooping or crouching.
 {¶ 30} 8. Claimant also submitted the December 12, 2002 report from Beverly R. Damrauer, Ph.D. Dr. Damrauer noted that claimant continues with a mixed mood disturbance and interpersonal withdrawal; that his physical pain is chronic and typically high despite multiple medical interventions; and that claimant is discouraged, his defenses are low and his coping strategies are almost nonexistent. She noted that claimant's singular interests tend to be nonphysical and avoiding people, and that his total psychological picture is not supportive of sustained remunerative employment. While she did recommend that claimant not give up all hope, she indicated that, at the very best, he could perform some very part-time work provided that he has flexibility and minimal physical demands.
 {¶ 31} 9. Claimant also submitted the vocational report of Joseph E. Havranek who noted that claimant has a limited education and a work history which is entirely medium in physical exertional level and that claimant is 64 years old. Mr. Havranek opined that claimant was incapable of any sustained remunerative employment based solely upon the allowed conditions in his claim.
 {¶ 32} 10. The record also contains the medical report of Paul J. Eby, M.D., dated June 18, 2004. Dr. Eby concluded that claimant had the physical ability to perform light to sedentary work activity and opined that there were other nonallowed conditions, including coronary artery disease, lumbar spinal stenosis and cervical spinal stenosis, which had worsened claimant's overall physical condition.
 {¶ 33} 11. The record also contains the August 9, 2004 report of Harvey A. Popovich, M.D., who opined that claimant had reached maximum medical improvement ("MMI"), assessed a ten percent whole person impairment due to the allowed conditions, and opined that claimant was capable of performing sedentary work activity.
 {¶ 34} 12. The record also contains the August 18, 2004 report of Donald J. Tosi, Ph.D., who examined claimant for his allowed psychological condition. Dr. Tosi opined that claimant's allowed psychological condition had reached MMI, assessed a 20 percent whole person impairment, and opined that claimant could return to his former position of employment or any other employment for which he was otherwise qualified.
 {¶ 35} 13. The record also contains the November 15, 2004 vocational report of Anthony Stead who opined that claimant's age of 64 years should not be considered a barrier to reemployment as he still retains the ability to learn new skills and adapt to new environments. Mr. Stead concluded that claimant's educational level should be sufficient for entry-level, unskilled and semi-skilled tasks and that his work history should not be considered a barrier to reemployment.
 {¶ 36} 14. Claimant's application was heard before a staff hearing officer ("SHO") on December 6, 2004, and resulted in an order granting the requested compensation. The SHO relied upon the medical reports of Drs. Hejeebu and Damrauer and the vocational report of Mr. Havranek. In accepting claimant's severe physical restrictions, the SHO provided the following analysis:
 In support of his IC-2 Application for Compensation for Permanent Total Disability, filed 4/27/2004, the Injured Worker submitted the Physical Impairment Questionnaire completed by the Injured Worker's attending physician, Srini Hejeebu, M.D. Dr. Hejeebu indicates that the Injured Worker's impairments are permanent and that he will frequently experience pain or other symptoms severe enough to interfere with attention and concentration. More importantly, Dr. Hejeebu indicates that the Injured Worker's ability to sit continuously at one time is limited to only 45 minutes and that he can sit for a total of less than 2 hours in an 8 hour working day, with normal breaks. Dr. Hejeebu also indicates that the Injured Worker would need a job which permits shifting of positions at will from sitting to standing or walking. He also indicates that the patient needs to take unscheduled breaks approximately every half an hour during an 8 hour working day, and that he would have to rest one half hour to one hour before returning to work. He also states that the Injured Worker would sometimes need to lie down, at unpredictable intervals during a work shift. The Injured Worker's ability to lift and carry objects in a competitive work situation would be limited to less than 10 pounds for a frequency of less than 1/3 of the working day. He would be totally prohibited from any stooping or crouching.
 The United States Court of Appeals, for the Sixth Circuit, has previously addressed the issue of whether a person with the restriction of limited sitting and the requirement of a sit/stand option is capable of performing sustained remunerative employment. In the case of Wages v. The Secretary of Health and Human Services, the Court of Appeals stated that "Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work. . . . There are some jobs in the national economy — typically professional and managerial ones — in which a person can sit or stand with a degree of choice. . . . However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person can not ordinarily sit or stand at will."
 Furthermore, the Court of Appeals of Ohio, for the Tenth Appelet [sic] District, also addressed that sit/stand issue in a similar situation in the case of Cable v. Industrial Commission
(1999), no. 98 AP-1300. In that case, the Injured Worker was found to be capable of doing sedentary work activities, but she was also required to have the option to have "some modification and flexibility in her schedule . . . which would allow her to move about some and, in addition, she could do activities with a 10-pound lifting limit, if she had a sit/stand option." The Court of Appeals found that it could not be adequately explained how those restrictions imposed upon the Injured Worker would be in accord with the Industrial Commission's definition of sedentary work under Ohio Administrative Code Section 4121-3-34(B)(2)(a).
 Thus, it is the finding of this Staff Hearing Officer that it is extremely unlikely that any employer in the work force would be willing to hire the Injured Worker in this claim, who must be restricted to sitting a total of less than 2 hours in an 8 hour work day, with an ability to shift positions from sitting to standing or walking at will, a need to take unscheduled breaks every half an hour, with a break lasting one half to one hour. Therefore, this Staff Hearing Officer finds the opinion of the Injured Worker's attending physician, Srini Hejeebu, M.D., to be persuasive. Dr. Hejeebu stated his professional medical opinion that his patient is not capable of sustained remunerative employment, on the Physical Impairment Questionnaire dated 11/4/2002. Said opinion is found to be persuasive.
(Emphasis sic.)
 {¶ 37} The SHO also relied upon the report of Dr. Damrauer. As such, the commission found that, based solely upon the allowed medical conditions, claimant was entitled to PTD compensation. However, in spite of this finding, the commission went on and addressed the nonmedical vocational factors as well. Specifically, the commission determined that claimant, due to his age, was not eligible to participate in rehabilitation services through the Ohio Bureau of Workers' Compensation. The commission concluded that claimant's age affects both his functional capabilities as well as his ability to develop new academic or other skills required to perform entry-level sedentary employment. The SHO concluded that academic remediation or vocationally-oriented training would not be a reasonable option based upon claimant's age. In reviewing claimant's education, the commission noted that claimant had a limited education, with no subsequent GED. The commission concluded that this presented a fairly negative educational profile regarding employability and that claimant's education would be inadequate for many sedentary clerical positions and that it would also effect his ability to develop academic or other skills required to perform entry-level sedentary jobs. The commission also found that claimant's work history did not provide him with any skills which would be transferable to sedentary work. Thereafter, the commission determined that the start date for PTD compensation should be April 27, 2002, and provided the following explanation therefore:
 Therefore, the Injured Worker is hereby awarded Permanent and Total Disability Compensation, pursuant to Ohio Revised Code Section 4123.58(A), from 4/27/2002 through 12/6/2004 and continuing thereafter without suspension, unless future facts or circumstances warrant a change, pursuant to Ohio Revised Code Section 4123.52. The starting date of Permanent Total Disability Compensation is based upon the 11/4/2004 report from the Injured Worker's attending physician, Srini Hejeebu, M.D., which indicates at line 12 of said report that the Injured Worker has been incapable of sustained remunerative employment since the date of October, 1985. However, Permanent Total Disability Compensation may not begin prior to 4/27/200[2], as Ohio Revised Code Section 4123.52 provides that the Industrial Commission "shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefore." Since the Injured Worker's IC-2 Application for Compensation for Permanent and Total Disability was filed on 4/27/2004, said award can not begin prior to 4/27/2002.
 {¶ 38} 15. Relator filed a motion for reconsideration and, in the alternative, requested readjustment of the starting date for PTD compensation.
 {¶ 39} 16. Relator's request for reconsideration was denied by order of the commission mailed February 9, 2005. In that order, the commission did not address the request for readjustment of the start date of compensation.
 {¶ 40} 17. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 42} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 43} In this mandamus action, relator asserts that the commission abused its discretion in the following regards: (1) by granting claimant's second application for PTD compensation without considering claimant's failure to seek retraining or otherwise enhance his reemployment potential; (2) by granting PTD compensation where there was not "some evidence" to support same; (3) by commencing the award of PTD compensation beginning April 27, 2002, without "some evidence" to support that determination; and (4) by failing to adjudicate relator's request to readjust the start date for claimant's PTD compensation.
 {¶ 44} In its first argument, relator contends that the commission abused its discretion by denying claimant's second application for PTD compensation without addressing his failure to seek vocational retraining. Relator premises this argument on the fact that claimant's first application for PTD compensation was denied after the commission found that claimant retained the ability to perform sedentary work activity and that, given his relatively young age, he had the opportunity to seek vocational retraining for other employment. Relator argues that, in the intervening years, claimant's physical condition has not really worsened and his failure to seek rehabilitation should preclude the granting of a second application for PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 45} First, every application for PTD compensation is considered anew by the commission. The fact that PTD compensation was denied at one point in time does not necessarily mean that it will be denied in the future. Although relator is correct to argue that the simple aging process, without more, does not provide a basis for granting a later PTD compensation, that is not all that has happened in the present case.
 {¶ 46} Second, the magistrate notes that claimant's first application for PTD compensation was filed in 1990. At that time, claimant was 50 years old. The commission relied upon medical reports from physicians who opined that claimant retained the physical ability to perform sedentary to light-duty work. Claimant's application was denied by the commission in 1993. Claimant's second application for PTD compensation was filed approximately ten years after the denial of his first application. In the interim, claimant was awarded a 33 percent permanent partial impairment and claimant had two surgical procedures performed. In July 2003, Brian Hoeflinger, M.D., performed a disectomy at C5-6 and C6-7. In September 2003, Dr. Hoeflinger performed a disectomy at L3-4 and L4-5.
 {¶ 47} Third, claimant's treating physician, Dr. Hejeebu, opined that claimant's limitations had severely worsened. Dr. Hejeebu noted that claimant could only sit for 45 minutes at a time and could sit for less than two hours in a regular eight hour work day. Dr. Hejeebu noted that claimant would need to be able to shift positions from sitting to standing to walking during the course of a day, would need to take unscheduled breaks approximately every one-half hour and that his legs should be elevated if he sits for a prolonged period of time. Dr. Hejeebu also noted that claimant needs to use a cane or other assisted device when standing and walking and that he would need to lie down at different times during the day. The commission relied upon this medical evidence. As such, the commission accepted as competent, credible and persuasive medical evidence which demonstrated significantly greater physical restrictions than claimant had in 1993.
 {¶ 48} Fourth, at oral argument, counsel for the commission pointed out that, even if claimant would have pursued some rehabilitation and assuming that claimant may have even secured some employment for a period of time, the evidence upon which the commission relied indicates that, at this point in time, claimant is not capable of performing even sedentary work. The magistrate is persuaded by this argument.
 {¶ 49} Based on the foregoing, the magistrate notes that claimant had two surgical procedures and that, according to his treating physician, his limitations severely increased in the time between his first application for PTD compensation and his second and, the commission found that, based solely upon the medical conditions, claimant could not perform any work. Both surgeries were performed after the commission's original order denying PTD compensation. Furthermore, even if claimant would have pursued rehabilitation in the last 11 years, he still would not be capable of performing some sustained remunerative employment at this point in time. In light of this, this magistrate finds that it was not an abuse of discretion for the commission to grant him PTD compensation without discussing claimant's failure to seek any vocational retraining in the interim between the denial of his first PTD application and the filing of his second PTD application. This is not a situation where the only change in the claimant's condition is that the claimant has aged. As such, this magistrate finds that it did not constitute an abuse of discretion.
 {¶ 50} Relator also contends that the commission abused its discretion because the commission's order granting claimant PTD compensation is not supported by some evidence. This magistrate disagrees. The commission relied upon the medical report of Dr. Hejeebu and the severe limitations which Dr. Hejeebu placed upon claimant's abilities. Although Dr. Hejeebu did not make the statement that claimant was permanently and totally disabled, the commission concluded that, based upon the severe limitations, there were no jobs which this claimant could perform.
 {¶ 51} In its order, the commission specifically cited two cases, one from the United States Court of Appeals for the Sixth Circuit and this court's decision in State ex rel. Cable v. Indus. Comm. (Sept. 28, 1999), Franklin App. No. 98AP-1300. In Cable, this court granted a writ of mandamus ordering the commission to vacate an order denying an application for PTD compensation based upon a determination that the medical restrictions imposed upon the claimant in that case were very restrictive. While this court did not order the commission to find that claimant was permanently and totally disabled, this court did order the commission to consider the severity of the restrictions and found that a more thorough explanation and analysis was necessary.
 {¶ 52} In the present case, this magistrate agrees with the explanation and conclusion reached by the commission — this claimant is so severely restricted, from a physical standpoint, that it is difficult to imagine any job which this particular claimant could perform. Based upon that, this magistrate finds that the commission did not abuse its discretion in finding that, from a medical standpoint alone, claimant herein is permanently and totally disabled.
 {¶ 53} Relator also contends that the commission abused its discretion by determining April 27, 2002 as the start date for the payment of PTD compensation. Furthermore, relator contends that the commission abused its discretion by not addressing that issue when relator raised it in its motion for reconsideration.
 {¶ 54} In its brief, the commission acknowledged that it should have separately addressed relator's request to readjust the start date for PTD compensation. Although the commission argues that a writ of mandamus is not necessary inasmuch as Dr. Hejeebu opined that the restrictions he placed on claimant were permanent and had been in effect since 1985, the magistrate still finds that it is questionable whether or not the commission should have awarded PTD compensation back two years prior to the date of claimant's application as more fully explained hereinafter. Dr. Hejeebu issued his report on November 4, 2002. Claimant filed his application for PTD compensation on April 27, 2004, and submitted the report of Dr. Hejeebu. Pursuant to R.C. 4123.52, the commission could not make an award for more than two years prior to the date of claimant's application. That is why in the present case, the commission awarded compensation to begin April 27, 2002. The commission asserts, in its brief, that this decision was made because Dr. Hejeebu indicated that the restrictions on claimant were in effect since 1985. However, that finding negates the fact that, as of 1993, the commission found that claimant was not permanently and totally disabled and, instead, found that claimant was capable of at least sedentary work. As such, this magistrate finds that it was an abuse of discretion for the commission to grant the award of PTD compensation as of April 27, 2002, without a further explanation for that, especially in light of the fact that the commission, in 1993, did not believe that claimant was under those physical restrictions. As such, the magistrate finds that a writ of mandamus is appropriate relative to the start date of the award of PTD compensation.
 {¶ 55} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in awarding claimant PTD compensation; however, relator has demonstrated that the commission abused its discretion by setting the start date for the payment of PTD compensation as of April 27, 2002. As such, a writ of mandamus is appropriate in the present case to compel the commission to redetermine the start date of claimant's PTD compensation.